## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Alfred T. White, | ) | Civil Action No. 2:18-1043-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Jonathan Chase Isemen, Brandon T. Braxton, | ) | |
| and Clarendon County Sheriff's Office, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 36) recommending the Court grant in part and deny in part Defendants Jonathan Chase Iseman, Brandon T. Braxton, and Clarendon County Sheriff's Office's (collectively "Defendants") Motion for Summary Judgment (Dkt. No. 31). For the reasons set forth below, the Court adopts the R & R as the order of the Court, grants Defendants' motion as to Plaintiff Alfred T. White's 42 U.S.C. § 1983 claim, denies summary judgement without prejudice as to Plaintiff's remaining state law claims, and remands said state law claims to Clarendon County.

### I.     Background[1]

On October 13, 2016, Plaintiff was driving southbound on Interstate 95 in Clarendon County, South Carolina. (Dkt. No. 31-2 at 1).[2] Deputy Iseman pulled Plaintiff over for speeding and driving close to the white fog line. (*Id.*). After Plaintiff pulled over, Isemen approached the

---

[1] All facts are viewed in a light most favorable to Plaintiff, the non-moving party.
[2] Both parties submit and rely on Defendant Iseman's October 13, 2016 Incident Report, the contents of which the Court finds are generally undisputed. Both parties also submit and rely on the Dash Cam Video of the traffic stop at issue.

passenger side of Plaintiff's vehicle, requested Plaintiff's license and registration, and requested Plaintiff meet Iseman at the front of his patrol vehicle. (*Id.*).  While next to Plaintiff's car, Iseman observed multiple cell phones throughout the vehicle, an open bible on the passenger seat, and a bookbag, a dog crate, and a bag of dog food in the back of the car. (*Id.*).[3]  Once both individuals were in front of the patrol car, Iseman explained to Plaintiff he conducted the traffic stop because Plaintiff was speeding and driving too close to the fog line.  Plaintiff told Iseman he was a Florida resident and had been visiting family in Virginia.  Plaintiff explained a cousin had rented the car for a period of seven days so that Plaintiff could drive to Florida, pack his belongings, and move to Virginia. (*Id.* at 2).

At this point, Iseman asked Plaintiff about prior arrests.  According to the Incident Report, Plaintiff "hesitated and then stated he had been arrested for drugs in the past." Iseman "could see that [Plaintiff] was beginning to become increasingly nervous as Deputy Iseman could see his breathing increase." Plaintiff's "pulse in [his] neck" was visible.  Plaintiff told Iseman that "everything in the vehicle belonged to" Plaintiff and asserted there were no illegal items in the car. When Iseman asked Plaintiff if he was carrying currency over $10,000, Plaintiff "looked away and changed his response." (*Id.*).

At this point, roughly six minutes into the traffic stop, Iseman asked to search Plaintiff's car.  Plaintiff refused.  Within roughly a minute Deputy Braxton arrived on the scene with a K-9 unit.  The K-9 returned a positive alert.  Iseman searched the car and opened the bag of dog food. Iseman found a duct taped package consistent with "drugs or money."  Braxton and Iseman, neither of whom had searched Plaintiff's person, pulled out their weapons, pointed them at Plaintiff, and

---

[3] In opposition, and without citation to the factual record, Plaintiff contends he only had "his own cell phone, an extra cell phone he found at a rest area and promptly returned, and an iPod." (Dkt. No. 32 at 8).  Plaintiff admits, however, this his iPod looks like a cellphone. (*Id.*).

detained Plaintiff with handcuffs. (*Id.*); *see also* Dash Cam Video, (Dkt. No. 32-3). Iseman learned

the package was cash money. Initially, Plaintiff stated the money was his and "saved from doing

landscaping." (Dkt. No. 32-2 at 3).[4] According to Plaintiff, Braxton and Iseman "threatened

Plaintiff with arrest if he did not disavow the funds" and "forced" Plaintiff to return to return to

the Sheriff's Office with them. There, allegedly because he "felt pressured . . . so he would not be

arrested," Plaintiff signed a Department of Homeland Security abandonment form stating that he

disowned the $30,000 cash found in the dog food bag.

On March 7, 2018, Plaintiff filed a complaint against Defendants alleging state law claims

for false imprisonment (First Cause of Action), intentional infliction of emotional distress (Second

Cause of Action), conversion (Third Cause of Action), negligence/gross negligence/recklessness

(Fourth Cause of Action), negligent supervision/training (Fifth Cause of Action), and a federal

claim under § 1983 for intentional violation of Plaintiff's civil rights by excessive force and

unreasonable search and seizure (Sixth Cause of Action). (Dkt. No. 1-1). On September 11, 2019,

Defendants filed a Motion for Summary Judgement. (Dkt. No. 31). Plaintiff filed a response in

opposition on September 25, 2019. (Dkt. No. 32). Defendants filed a reply on October 2, 2019.

(Dkt. No. 33). Defendants' motion has been fully briefed and is ripe for disposition.

## II.    Legal Standard

### a.    Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court that has no presumptive

weight. The responsibility to make a final determination remains with the Court. *See Mathews v.*

*Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1). This

---

[4] At this point, each party's narrative diverges slightly.

Court must make a *de novo* determination of those portions of the R & R Plaintiff specifically objects to. Fed. R. Civ. P. 72 (b)(2). Where Plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). (internal quotation omitted). "Moreover, in the absence of specific objection to the R & R, the Court need not give any explanation for adopting the recommendation." *Wilson v. S.C. Dept of Corr.*, No. 9:14-cv-4365-RMG, 2015 WL 1124701, at *1 (D.S.C. Mar. 12, 2015). Neither party filed objections in this case, and the R & R is reviewed for clear error.

### b. Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)), though the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute, *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. Discussion

After a thorough review of the R & R, the Court finds that the Magistrate Judge ably addressed the issues and correctly concluded Defendants are entitled to summary judgment on

Plaintiff's § 1983 claim for excessive force and unreasonable search and seizure. The Magistrate Judge also correctly determined that Plaintiff's remaining state law claims should be remanded to Clarendon County.

### a. Unlawful Search and Seizure

Upon a review of the parties' arguments and the R & R, the Court finds the Magistrate Judge ably addressed the issues and correctly determined that Defendants are entitled to summary judgment on Plaintiff's claim that Defendants unlawfully seized Plaintiff by deploying the K-9 around Plaintiff's car, prolonging the instant traffic stop.

The Magistrate Judge correctly found Iseman's initial "seizure" of Plaintiff was justified because, as Plaintiff admits, Plaintiff was committing a traffic violation by speeding. White Deposition, (Dkt. No. 31-6 at 2) (admitting Plaintiff was exceeding the posted speed limit when Iseman pulled him over); *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014) ("When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.").

The Magistrate Judge then correctly concluded that no reasonable jury could find that Defendants' prolongation of the instant traffic stop by roughly 1-2 minutes for a dog sniff was unreasonable. Dash Cam Video, (Dkt. No. 32-3 at 16:41:01) (initiating K-9 free air sniff roughly seven minutes into traffic stop); *United States v. Bernard*, 927 F.3d 799,805 (4th Cir. 2019) ("A police officer can extend the duration of a routine traffic stop . . . if there is reasonable suspicion that an illegal activity is occurring"). As fully described in the R & R, which this Court adopts in whole, and as per the Incident Report cited by both parties, Iseman had reasonable suspicion criminal activity was afoot. While speaking to Plaintiff from the passenger side door, Iseman observed Plaintiff had multiple cellphones and a bible open on his front seat. For Iseman, based

on his experience and training, these signs were indicative of drug trafficking—the first to avoid detection and wiretaps by law enforcement and the second as a means of making law enforcement believe the individual is not involved in illegal activity. (Dkt. No. 32-2 at 3).  When viewed in combination with the fact Plaintiff became visibly nervous when questioned about past arrests, Iseman's decision to prolong Plaintiff's traffic stop with Braxton's K-9 was objectively reasonable. *See United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) ("If a police officer wants to detain a driver beyond the scope of a routine traffic stop, [ ] he must possess a justification for doing so other than the initial traffic violation . . . [and] a prolonged automobile stop requires either the driver's consent or a reasonable suspicion that illegal activity is afoot.").  And because the K-9 returned a positive alert, Defendants' search of Plaintiff's car was lawful. *Branch*, 537 F.3d at 340 n. 2 ("[I]t is well settled that a "positive alert" from a drug detection dog, in and of itself, provides probable cause to search a vehicle.").

Defendants are entitled to summary judgment on Plaintiff's unlawful search and seizure claim.

**b.  Excessive Force**

Upon a review of the parties' arguments and the R & R, the Court finds the Magistrate Judge ably addressed the issues and correctly determined that Defendants are entitled to summary judgment on Plaintiff's claim that Defendants used excessive force against Plaintiff.

Plaintiff argues that Braxton and Iseman's pointing their weapons at him and forcibly handcuffing him upon their finding a "brick" of an unknown substance in a bag of dog food was unreasonable.  The Magistrate Judge correctly determined, however, that the amount of force used by Braxton and Iseman was objectively reasonable under the circumstances. *E.g. Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (Fourth Amendment claims of excessive use of force during an

arrest or seizure are considered under an "objective reasonableness" standard). Plaintiff's own evidence shows that, when Defendants located the "brick" of an undetermined substance in Plaintiff's car (later determined to be cash), Plaintiff was standing at the back of his vehicle, unrestrained, and having never been searched. (Dkt. No. 32-2). For the reasons noted above, Iseman had a reasonable suspicion Plaintiff was transporting drug contraband. Thus, there was nothing unreasonable about either Braxton or Iseman drawing their weapons and handcuffing Plaintiff. *See* Braxton Deposition, (Dkt. No. 31-11 at 1-5) (explaining why securing a driver under such circumstances is warranted and necessary); *see also Graham v. Conner*, 490 U.S. 386, 396 (1989) (discussing factors to consider in assessing a police officer's actions under the "objective reasonableness" standard).

Defendants are therefore entitled to summary judgment on Plaintiff's excessive force claim.

### c. Plaintiff's Remaining State Law Claims

Having granted summary judgment to Defendants on Plaintiff's sole federal law claim, the Magistrate Judge correctly concluded that Plaintiff's remaining state law claims should be remanded to state court. The Magistrate Judge correctly applied *Carnegie-Mellon v. Cohill*, 484 U.S. 343 (1988) and found that judicial economy, convenience, fairness, and comity to state courts dictate that this action be remanded. *See, e.g.*, *Mills v. Leath*, 709 F. Supp. 671, 676 (D.S.C. 1988) (noting federal courts should decline to exercise pendant jurisdiction where the sole federal claim is dismissed and only state-law claims remain).

### IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R of the Magistrate Judge (Dkt. No. 36) as the order of the Court. Defendants' Motion for Summary Judgment (Dkt. No. 36) is

**GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** to the extent that Plaintiff's § 1983 claim is **DISMISSED**.  The motion is **DENIED** to the extent that Plaintiff's remaining state law claims are **REMANDED** to state court for disposition.

    **AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Court Judge

May 5, 2020
Charleston, South Carolina